## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-60263-RAR

**CORY D. MINGO**,

      Petitioner,

v.

**RICKY D. DIXON, SECRETARY,**
**FLORIDA DEPARTMENT OF CORRECTIONS**,

      Respondent.[1]

_____/

### ORDER DISMISSING HABEAS CORPUS PETITION

**THIS CAUSE** is before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, which challenges Petitioner's state-court conviction for armed kidnapping, robbery with a firearm, and grand theft auto in the Seventeenth Judicial Circuit Court, in and for Broward County, Florida, Case No. 12-014060CF10A.  *See* Amended Petition ("Am. Pet.") [ECF No. 8].  Respondent has filed a Response, [ECF No. 16], and Petitioner has provided a "Traverse" to the Response ("Reply"), [ECF No. 20].  After reviewing the Amended Petition, the applicable law, and the arguments of both parties, the Court finds that all of the claims within the Amended Petition have been procedurally defaulted or are otherwise not cognizable in these habeas proceedings.  Accordingly, the entirety of the Amended Petition must be **DISMISSED**.

---

[1]  The original Respondent in this case, Mark S. Inch, retired from his position as Secretary of the Florida Department of Corrections on November 19, 2021.  Former Secretary Inch's successor, Ricky D. Dixon, has been automatically substituted as the Respondent.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").  The Clerk's Office is **DIRECTED** to make this modification on the docket.

## PROCEDURAL HISTORY

The State of Florida charged Petitioner by way of Information with nine counts: five counts of armed kidnapping, two counts of robbery with a firearm, one count of armed carjacking, and one count of possession of a firearm by a convicted felon.  Information [ECF No. 17-1] at 7–10.  On March 26, 2014, a jury found Petitioner guilty of all five counts of kidnapping, the two counts of robbery with a firearm, and one count of grand theft auto—a lesser-included offense of armed carjacking.  Jury Verdict [ECF No. 17-1] at 100–07.

After the trial concluded, Petitioner's trial counsel filed a "Motion for a New Trial" pursuant to Fla. R. Crim. P. 3.600.  *See* Motion for New Trial [ECF No. 17-1] at 137–43.  Although this motion raised several arguments, its primary contention was that the jury had "discuss[ed] the case and reach[ed] conclusions prior to deliberation" and that several of the jurors had "gang[ed] up on and forc[ed]" a juror to change her vote from "not guilty" to "guilty."  *Id.* at 140.  After holding an evidentiary hearing on the matter, the trial court found that no juror misconduct had occurred and denied the motion for new trial.  *See* Order Denying Motion for New Trial [ECF No. 17-1] at 145–51.  The trial court ultimately sentenced Petitioner to seven concurrent life sentences. *See* Sentencing Orders [ECF No. 17-1] at 112–35.

Petitioner appealed his conviction and sentences to Florida's Fourth District Court of Appeal ("Fourth DCA").  In his Initial Brief, Petitioner argued that: (1) the trial court made "multiple evidentiary admission errors" regarding "a cell phone and text messages that came from the phone," Direct Appeal Initial Brief [ECF No. 17-1] at 180; (2) the trial court failed to hold a *Richardson*[2] hearing after the prosecutor purportedly reneged on a promise "that a key piece of evidence would not be introduced at trial," *id.* at 181; (3) the trial court erred in failing to grant a

---

[2] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

motion for judgment of acquittal on the kidnapping counts since "the alleged victims were able to immediately leave once the alleged perpetrators left," *id.*; (4) the trial court was required to grant a new trial after Petitioner had demonstrated instances of juror misconduct, *id.* at 181–82; and (5) the trial court erred in failing to suppress a photographic lineup that was "unduly suggestive," *id.* at 182. On October 19, 2017, the Fourth DCA summarily affirmed Petitioner's conviction in an unwritten opinion. *See Mingo v. State*, 232 So. 3d 1032 (Fla. 4th DCA 2017).

On February 18, 2018[3], Petition filed a *pro se* Motion for Postconviction Relief pursuant to Fla. R. Crim. P. 3.850. *See* First Postconviction Motion [ECF No. 17-1] at 264–80. Petitioner raised an additional eight claims: (1) his two convictions for robbery with a firearm violated double jeopardy since "there was no temporal break" between the two takings, *id.* at 277–78; (2) trial counsel was ineffective for failing to request that the trial court "instruct the jury on 'actual possession,'" *id.* at 278; (3) trial counsel was ineffective for failing to object "to the Court's imposition of a Habitual Sentence," *id.*; (4) trial counsel was ineffective for failing to request an instruction on the "independent act theory," *id*; (5) trial counsel was ineffective for failing to object "to the envelope being admitted into evidence that bared the Defendant's fingerprint," *id.* at 279; (6) counsel was ineffective for failing to "object or file a motion to dismiss" on Count 2 of the Information since it misspelled the victim's name, *id.*; (7) counsel was ineffective for failing to object when the trial court did not instruct the jury on "aggravation of a felony" pursuant to Fla. Stat. § 775.087(1), *id.*; and (8) counsel was ineffective for failing to "object to [a] defective verdict form" since the jury was not properly instructed, *id.* at 280.

---

[3] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

The State Attorney's Office filed a Response to the Postconviction Motion, arguing that all eight claims were "without merit" and recommending the denial of the motion. *See* First State Response [ECF No. 17-1] at 282–92. On July 5, 2018, the state postconviction court denied the First Postconviction Motion "for the reasons set forth in the State's Response." Order Denying First Postconviction Motion [ECF No. 17-1] at 294. After a failed Motion for Rehearing, *see* Motion for Rehearing [ECF No. 17-2] at 2–8; Order Denying Motion for Rehearing [ECF No. 17-2] at 10, Petitioner appealed the denial of his First Postconviction Motion to the Fourth DCA. On April 11, 2019, the Fourth DCA affirmed the state postconviction court's denial of the First Postconviction Motion in an unwritten opinion, *see Mingo v. State*, 270 So. 3d 1252 (Fla. 4th DCA 2019), with its mandate issuing on June 21, 2019, *see* Postconviction Mandate [ECF No. 17-2] at 34.

On November 13, 2019, Petitioner attempted to file a second or successive postconviction motion pursuant to Fla. R. Crim. P. 3.850(h). *See* Second Postconviction Motion [ECF No. 17-2] at 88–108. The Second Postconviction Motion contained only one argument: that trial counsel was ineffective for failing to file a "motion to suppress the historical cell phone location information data" that was ultimately used at trial. *Id.* at 104. The State Attorney's Office again filed a Response but instead argued that the state postconviction court should not reach the merits of the motion and deny it as procedurally barred under Florida law. *See* Second State's Response [ECF No. 17-2] at 112 ("[T]he instant Motion is considered successive and procedurally barred."). The state postconviction court "adopt[ed] the reasoning as set forth in the response of the State," and denied the Second Postconviction Motion as successive. Order Denying Second Motion for Postconviction Relief [ECF No. 17-2] at 115. At the time Respondent filed its Response, Petitioner had appealed the denial of his Second Postconviction Motion to the Fourth DCA, but the appellate

court had not yet ruled.  *See* Fourth DCA Docket [ECF No. 17-2] at 132.  However, the Court takes judicial notice of the fact that, on July 29, 2021, the Fourth DCA affirmed the state postconviction court's denial of the Second Postconviction Motion in an unwritten opinion.  *See Mingo v. State*, 323 So. 3d 729 (Fla. 4th DCA 2021).

## ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") imposes many restrictions on the filing of a prospective petition for writ of habeas corpus challenging a state-court conviction. To begin, a federal court cannot consider a § 2254 habeas petition unless it is filed within a one-year statute of limitations period.  *See San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011) (citing 28 U.S.C. § 2244(d)(1)).  Time-barred petitions or claims must be dismissed unless the petitioner can demonstrate one of the "exceedingly narrow" exceptions to that rule.  *Id.* at 1267–68.  The scope of a federal habeas petition is also limited, as a petitioner can only attack his state-court conviction in federal court if "he is in custody in violation of the Constitution or law or treaties of the United States."  28 U.S.C. § 2254(a); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("But it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.") (emphasis in original).  Unlike a time-barred claim, a federal court can never consider a claim that alleges errors of state law and must simply dismiss such claims as non-cognizable under § 2254.  *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

Even if the petitioner brings a timely federal petition that only raises matters of federal or constitutional law, a federal court cannot review the petition on its merits unless every claim has

been "exhausted" in state court.  *See generally* 28 U.S.C. § 2254(b)–(c).  The exhaustion requirement is met if a petitioner has "fairly present[ed] every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review."  *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up); *see also Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("Plainly, the purpose of the exhaustion requirement is to afford the state court 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  "If a petitioner fails to 'properly' present [their] claim to the state court—by exhausting [their] claims and complying with the applicable state procedure—prior to bringing [their] federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim."  *Mason*, 605 F.3d at 1119.  In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis added).  If, and only if, the habeas petitioner can surmount these exacting procedural demands will a federal court be able to review a claim on its merits—and, even then, AEDPA imposes a "highly deferential standard [of review] that is intentionally difficult to meet."  *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1348 (11th Cir. 2019).

　　　Respondent proposes that all four[4] of Petitioner's claims fail at this preliminary, procedural phase and that the Court need not review any of the claims on their merits.  While Respondent concedes that the Petition itself is timely, *see* Response at 6 ("Therefore, this petition is timely

---

[4]  The Amended Petition contains a <u>fifth</u> ground for relief, alleging that trial counsel "was ineffective in failing to file [a] motion to suppress historical cell site location information[.]"  Am. Pet. at 12.  However, Petitioner subsequently filed a "Motion to Delete Unexhausted Claim" which asked the Court to "delete [Ground Five] and proceed with the exhausted claims" since he correctly acknowledged that Ground Five was unexhausted and could no longer be exhausted in state court.  Motion to Delete Unexhausted Claim [ECF No. 12] at 2–3.  The Court granted Petitioner's request, *see* Paperless Order [ECF No. 14], and neither the Respondent nor the Court has considered Ground Five.

because it was filed within the 365-day limitations period."); *see also Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a state intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice."), it argues that all four claims therein have been procedurally defaulted since Petitioner "failed to apprise the state court of any federal issues when he raised these claims on direct appeal[,]" Response at 8. The Court agrees with Respondent that Grounds Two, Three, and Four are all unexhausted and procedurally defaulted. The Court also concurs that Ground One should be dismissed because it raises a pure state law claim that is not cognizable in a habeas proceeding.

### A. *No Relief can be Granted on Ground One*

In Florida, trial courts are required to hold a "*Richardson* hearing" when the "state fails to comply with a discovery rule[.]" *Card v. Dugger*, 911 F.2d 1494, 1520 n.25 (11th Cir. 1990). Petitioner alleges in Ground One that the trial court was obligated to conduct such a hearing after the prosecutor "moved to introduce an envelope and letter that purportedly had Petitioner's [fingerprint]." Am. Pet. at 5. According to Petitioner, "the prosecutor expressly stated that the letter would not be introduced" and that, because of this false representation, he never saw the letter and envelope prior to its introduction at trial. *Id.* at 6. This is identical to the argument Petitioner made in "Point II" of his direct appeal Initial Brief. *See* Direct Appeal Initial Brief [ECF No. 17-1] at 189 ("Appellant objected to the introduction of the letter and argued that the prosecutor expressly stated that the letter would not be introduced and that appellant had not seen the envelope."). Respondent argues that both the Petition and the Initial Brief "[make] absolutely no reference to a federal claim" and that the Court should dismiss Ground One as unexhausted. Response at 7.

Whether a *Richardson* hearing should be held is a matter that only implicates state law. The Court cannot grant habeas relief on this issue, even if the state court erred in some way. *See Coleman v. Jones*, No. 16-cv-00053, 2018 WL 1278759, at *1 (N.D. Fla. Mar. 12, 2018) ("[T]he alleged error in the state trial court by not conducting a *Richardson* hearing constitutes a state law issue and is not a cognizable basis for relief in federal habeas proceedings."); *Cisneros v. McNeil*, No. 05-cv-762, 2008 WL 1836368, at *5 (M.D. Fla. Apr. 23, 2008) ("Whether the trial court failed to conduct a *Richardson* hearing is a matter of state law and is not cognizable on federal habeas corpus review."). Accordingly, the Court must dismiss Ground One for failing to allege a claim that is cognizable under § 2254. *See McCullough*, 967 F.2d at 535 ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").[5]

### B. Grounds Two, Three, and Four are Procedurally Defaulted

Next, the Court will address Grounds Two, Three, and Four together. To briefly summarize these claims, Petitioner alleges in Ground Two that the trial court erred in denying a motion to suppress which moved "to exclude the results of the photo lineups on the grounds that they were unduly suggestive." Am. Pet. at 7. In Ground Three, Petitioner claims the trial court abused its discretion in denying Petitioner's motion for a new trial since there was evidence that "juror misconduct" occurred. *Id.* at 9. Finally, Petitioner argues in Ground Four that the trial court erred in admitting into evidence a text message from a phone number which said, "I'm getting

---

[5] As an aside, Florida law only requires a *Richardson* hearing when "there is a possible discovery violation[.]" *Thomas v. State*, 63 So. 3d 55, 59 (Fla. 4th DCA 2011). The record flatly contradicts Petitioner's clam that he had "never" seen the letter and envelope, as the prosecutor at trial stated that "[w]e gave [Petitioner] the letter." Trial Tr. [ECF No. 18-1] at 401. Since the record is clear that Petitioner was given a copy of the letter before trial, the trial court properly concluded that no discovery violation occurred—*i.e.*, no *Richardson* hearing was necessary. *See Jules v. State*, 178 So. 3d 475, 478 (Fla. 4th DCA 2015) (affirming the trial court's decision not to hold a *Richardson* hearing since "the State turned over all documents . . . [and] the defendant had the opportunity to review those documents.").

ready to rob this [n-word]," even though there was no evidence that Petitioner had sent that message. *Id.* at 10. Respondent agrees that all of these claims were properly raised on direct appeal in the Fourth DCA, but Petitioner failed to exhaust all of these grounds because "he failed to apprise the state court of any federal issues when he raised these claims on direct appeal." Response at 8. After reviewing the Amended Petition and the arguments Petitioner made to the Fourth DCA, the Court finds that Petitioner has <u>never</u> (not now and not in state court) asserted a violation of federal law; thus, the Court agrees with Respondent that all three grounds should be dismissed as procedurally defaulted.

Grounds Two, Three, and Four lie at the confluence of two closely related principles governing § 2254 cases. First, as the Court has already discussed in-depth, "it is only noncompliance with <u>federal</u> law that renders a State's criminal judgment susceptible to collateral attack [via § 2254]." *Wilson*, 562 U.S. at 5. Second, in order to exhaust a claim that is presented in a habeas petition, the petitioner must have "fairly presented" the same claim "to the state's highest court, either on direct appeal or on collateral review." *Mason*, 605 F.3d at 1119. When you combine these two axioms, it becomes clear that exhaustion is only possible when a petitioner alleges a matter of federal or constitutional importance in his habeas petition <u>and</u> that same federal claim was "fairly presented" to the state court. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("Ultimately, to exhaust state remedies fully, the petitioner must make the state court aware that the claims asserted present federal constitutional issues.") (cleaned up). Eleventh Circuit case law is clear that the petitioner must explicitly invoke federal law to sufficiently exhaust his claims in state court; "it [is not] sufficient that all facts necessary to support the [federal] claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (cleaned up).

Petitioner plainly failed to exhaust Grounds Two, Three, and Four because he did not assert these matters as federal claims in state court (nor does he rely on federal law in his Amended Petition).  Ground Two, which was initially raised as "Point V" on direct appeal, contains a conclusory allegation—without any reference to federal law—that the photo lineups used to identify Petitioner were "unduly suggestive."  Am. Pet. at 7.  On direct appeal, Petitioner did not cite any federal law or the Constitution and instead relied on a two-step test used by Florida courts to suppress an out-of-court identification.  *See* Initial Brief [ECF No. 17-1] at 199 (citing *Jenkins v. State*, 96 So. 3d 1110, 1112 (Fla. 1st DCA 2012)).  Ground Three, originally "Point IV" on appeal, merely argues that the trial court "abused its discretion" in denying Petitioner's motion for a new trial, without claiming that the trial court's decision ran afoul of the Constitution or federal law.  Am. Pet. at 9.  Petitioner again only cited Florida law on "juror misconduct" in his Initial Brief.  *See* Initial Brief [ECF No. 17-1] at 196–97.  Finally, Ground Four of the Petition (formerly "Point I") simply challenges one of the trial court's evidentiary rulings during trial, and does not explain how this ruling offended a constitutional right.  *See* Am. Pet. at 10 ("The prosecutor, over Petitioner's staunch objection, asked witness Ferguson to read a text message that came from the phone number in question[.]").  Once again, Petitioner only argued on direct appeal that these text messages were hearsay under Florida law.  *See* Initial Brief [ECF No. 17-1] at 187–88 (citing Fla. Stat. § 90.801(1)(c)).  It is clear that <u>none</u> of these claims have ever relied upon federal law, and Petitioner has thus failed to meet the exhaustion requirements of § 2254.  *See Preston*, 785 F.3d at 458 ("Because the gravamen of his claim, as presented to the state courts, dealt with state law, we held that the petition failed to exhaust his federal claim."); *McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) ("McNair never cited any United States Supreme Court or federal appellate court case dealing with extraneous evidence, nor did he mention the presumption of prejudice that

arises under federal law when jurors consider such evidence. Instead, he relied on state law opinions to argue a state law claim under a state law standard[.]") (cleaned up).

In his Reply, Petitioner disputes Respondent's argument that he failed to exhaust Ground Two. He reasons that, although he previously (and exclusively) relied upon state law, Florida's test for the suppression of an out-of-court identification is identical to the federal test. *See* Reply at 3 ("Hence, the same test employed by both State and Federal court validate this claim as exhausted."). This argument is foreclosed by binding Eleventh Circuit precedent. Exhaustion is not accomplished when the Petitioner relies on a state law standard, even if that state law standard is substantially similar (or even identical) to the federal standard. *See Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("The difficulty is that in addition to the Sixth Amendment right of confrontation guaranteed by the U.S. Constitution, the Florida Constitution also guarantees a right of confrontation. . . . Simply referring to a "constitutional right of confrontation of witnesses" is not a sufficient reference to a federal claim[.]"); *Preston*, 785 F.3d at 458 ("Together, *Lucas* and *Baldwin* stand for the proposition that a petitioner with a claim that could arise under state or federal law must clearly indicate to the state courts that he intends to bring a federal claim."); *see also Baldwin*, 541 U.S. at 32 ("We consequently hold that ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.").[6] Consequently, the Court finds that Grounds Two, Three, and Four are unexhausted and procedurally defaulted.

---

[6] Petitioner relies on an unpublished Eleventh Circuit decision, *Mulnix v. Sec'y, Dep't of Corr.*, 254 F. App'x 763 (11th Cir. 2007) which found that a federal claim can be exhausted when a petitioner's state law claim "us[es] a standard identical to the one required under federal law." *Id.* at 765. *Mulnix* is unpersuasive in light of *Preston*, a published, precedential decision, which criticized *Mulnix* and approvingly cited other unpublished Eleventh Circuit cases for the proposition that "raising a state claim does not exhaust an identical federal one." *Preston*, 785 F.3d at 460.

### C.  *No Exception to the Procedural Default Doctrine Applies*

The Supreme Court has recognized two ways to excuse a procedural default: "cause and prejudice" and "actual innocence."  *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default.  We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense.").  To demonstrate "cause and prejudice," the petitioner must show that "some objective factor external to the defense impeded the effort to raise the claim properly in the state court[,]" and that, had the claim been properly raised, "there is at least a reasonable probability that the result of the proceeding would have been different."  *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017).  In contrast, the actual innocence exception can only be met when the petitioner provides new evidence showing that "it is more likely than not that no reasonable juror would have convicted the petitioner."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Since Petitioner does not attempt to allege that the actual innocence exception applies, the Court will not address that matter further.  *See Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) (holding that the petitioner has the burden of proving "actual innocence").  However, for the first time in his Reply, Petitioner argues that the Court should apply the "cause and prejudice" exception to all four grounds for relief.  Specifically, Petitioner argues that the Court should find cause for the procedural default because "appellate counsel did not federalize [Petitioner's] claim and the failure to do so excuse[s] the default."  Reply at 4.  Although Petitioner does not explicitly cite the case, he is clearly relying on the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S.

1 (2012) which held that, in very limited circumstances, ineffective assistance of counsel "may be 'cause' to excuse the procedural default[.]" *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014) (citing *Martinez*, 566 U.S. at 15–16).

      The Court finds that Petitioner's reliance on *Martinez* is misplaced for three reasons. *First*, Petitioner raised this argument for the first time in his Reply and not the Amended Petition itself. As a general rule, the Court cannot (and should not) consider arguments which are made for the first time in a Reply. *See Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1515 (S.D. Fla. 1996) ("[T]he Court finds that the movant may not raise new arguments in a reply brief.") (citing S.D. Fla. L.R. 7.1(c)); *see also Riechmann v. Fla. Dep't of Corr.*, 940 F.3d 559, 579 (11th Cir. 2019) ("Riechmann does argue in his reply brief that he can demonstrate cause and prejudice, but arguments raised for the first time in a reply brief are not properly before a reviewing court.") (cleaned up). *Second*, even if the Court accepts that appellate counsel was ineffective for failing to raise the federal nature of Petitioner's claims, Petitioner himself <u>again</u> fails to assert the federal nature of his claims in the instant Petition. *See generally* Am. Pet.

      *Third*, and most importantly, the limited exception laid out in *Martinez* does not apply here. The Supreme Court emphasized that this rule only allows "a federal habeas court to hear a claim of <u>ineffective assistance of trial counsel</u> when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding[.]" 566 U.S. at 14 (emphasis added). In other words, the *Martinez* exception only applies when "the prisoner failed [to properly] raise an ineffective-trial-counsel claim[] in his state initial-review proceeding," <u>and</u> "the prisoner did not have collateral counsel or his counsel was ineffective." *Lambrix*, 756 F.3d at 1260. Grounds Two, Three, and Four were all raised on direct appeal and were not ineffective assistance of counsel claims; therefore, *Martinez* does not apply. *See id.* ("Importantly, the *Martinez* rule is

expressly limited to attorney errors in initial-review collateral proceedings: 'The holding in [*Martinez*] does not concern attorney errors in other kinds of proccedings[.]'") (quoting *Martinez*, 566 U.S. at 16).

In addition, even if appellate counsel was ineffective for failing to "federalize" these claims of trial court error, Petitioner "must have first exhausted the underlying ineffective assistance of appellate counsel claim, which he did not do." *Brisciano v. Sec'y of Dep't of Corr.*, No. 16-cv-2507, 2018 WL 9816060, at *6 (M.D. Fla. Aug. 8, 2018). Ineffective assistance of counsel can be cause for a procedural default, but the exhaustion doctrine "requires that a claim of ineffective assistance be presented to the state courts <u>as an independent claim</u> before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986) (emphasis added). Because Petitioner never argued in state court that appellate counsel was ineffective for failing to "federalize" his state court claims, this ineffective assistance of appellate counsel claim (like Grounds Two, Three, and Four) is unexhausted.[7] *See Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) ("[P]rocedurally-defaulted claims of ineffective assistance *cannot* serve as cause to excuse a default of a second claim.") (emphasis in original). Since Petitioner is procedurally barred from raising a new ineffective assistance of counsel claim in Florida's state courts, *see* Fla. R. App. P. 9.141(d)(5) ("A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review[.]"); Direct Appeal Mandate [ECF No. 17-1] at 262 (issuing on

---

[7] Petitioner did file a writ of habeas corpus in the Fourth DCA arguing that appellate counsel was ineffective for "failing to raise the trial court['s] denial of [the third] motion in limine to exclude text message[.]" Writ of Habeas Corpus [ECF No. 17-2] at 44. However, since Petitioner did not specifically challenge appellate counsel's failure to federalize his other claims on direct appeal, the mere fact that Petitioner challenged his appellate counsel's effectiveness on a different matter is not sufficient to exhaust the claim. *See Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1158 (11th Cir. 2022) ("[A]djacent claims or nominally similar claims do not make the cut [for exhaustion purposes].").

November 15, 2017), he cannot overcome the procedural default for either his ineffective assistance of appellate counsel claim or Grounds Two, Three, and Four.[8]  Accordingly, Grounds Two, Three, and Four must be dismissed.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA").   A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a petitioner must obtain a COA.  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes

---

[8]  Somewhat confusingly, Petitioner could overcome the procedural default of his ineffective assistance of appellate counsel claim by showing cause and prejudice for that claim.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("To hold, as we do, that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim.") (emphasis in original).  Nevertheless, Petitioner has not met his burden to show that some "external factor" prevented him from challenging the effectiveness of his appellate counsel in state court.  *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice.").  The Court also notes that Petitioner's misunderstanding or lack of knowledge about this exhaustion requirement would not constitute sufficient cause to excuse the procedural default.  *See Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("It is also established that ignorance of available post-conviction remedies cannot excuse a procedural default.").

that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the correctness of the Court's procedural rulings in dismissing Ground One as not cognizable in a § 2254 proceeding and dismissing the remaining grounds for relief as procedurally defaulted.  Accordingly, a COA will not issue.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Amended Petition [ECF No. 8] is **DISMISSED**. Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**. All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.  This case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 21st day of June, 2022.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   Cory D. Mingo
      DC # L79790
      South Bay Correctional Facility
      Inmate Mail/Parcels
      600 U.S. Highway 27 South
      South Bay, FL 33493
      PRO SE

Jonathan P. Picard
Office of the Attorney General
1515 N. Flagler Drive, Suite 900
West Palm Beach, FL 33401
Email: Jonathan.picard@MyFloridaLegal.com

Noticing 2254 SAG Broward and North
Email: CrimAppWPB@MyFloridaLegal.com